325 So.2d 401 (1976)
THE FLORIDA BAR, Petitioner,
v.
William S. BLALOCK, Respondent.
No. 47100.
Supreme Court of Florida.
January 7, 1976.
Bernard C. O'Neill, Jr., Bar Counsel, Orlando, and David G. McGunegle, Asst. Staff Counsel, Tallahassee, for petitioner.
James B. Clayton of Clayton & James, DeLand, for respondent.
BY THE COURT:
This matter is before us on the petition of The Florida Bar to review a referee's report in disciplinary proceedings directed against William S. Blalock. The Bar asks that we approve the referee's findings of facts and his determination of guilty conduct, but urges that we increase the disciplinary punishment over that which the referee recommended.[1] Blalock essentially admits his misconduct, but argues for mitigation of the discipline.
The referee made the following findings and recommendations:
"1. The Respondent, William Shaw Blalock, is, and at all times hereinafter mentioned was, a member of The Florida Bar, subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.
2. The Respondent was retained by Broxie Parnell, a/k/a Broxie Harris, a/k/a Broxie Parnell Smith, hereinafter called Broxie Harris, in October of 1971 to obtain a partnership accounting and partition *402 of real estate in the Ninth Judicial Circuit, Orange County, Case No. 71-6413. The Respondent and Broxie Harris had had a prior attorney/client relationship during the fall of 1968 for which she paid the Respondent $225.00 for professional services rendered at that time.
3. The 1971 litigation described in paragraph 2 above resulted in the entry of a court order on April 24, 1973 directing the defendant, Ben Smith, to pay the plaintiff, Broxie Harris, the sum of $25,000.00.
4. The Respondent received on behalf of Broxie Harris $1,947.00 on or about April 7, 1972; $14,000.00 on or about June 29, 1972; and $6,224.58 on or about May 22, 1973, for a total of $22,171.58, as a result of this litigation.
5. Broxie Harris has received a total of $10,070.61 from the Respondent despite numerous and persistent demands by Broxie Harris of the Respondent that he deliver to her or account for the funds held in trust for her by the Respondent. Respondent has accounted for the disbursement of $896.07 which he received in trust from or on behalf of his client, Broxie Harris, and which he expended on her behalf for the payment of costs associated with the litigation and legal representation he was providing to her.
6. The Respondent claims that on October 5, 1971 he entered into a contingent fee contract with Broxie Harris which entitled him to forty percent (40%) of the money collected for his professional services in the event suit was filed. Broxie Harris denies any such agreement and claims that the Respondent is only entitled to $550 which she has paid. I find as a matter of fact that the Respondent and Broxie Harris did enter into a contingent fee contract (Respondent's Exhibit 3) on or about October 5, 1971, under which the Respondent provided professional services which resulted in a stipulated settlement in favor of Broxie Harris on or about March 9, 1972 (Respondent's Exhibit 10), which was later reduced to formal court order on or about April 24, 1973. The payments totalling $22,171.58 more particularly described above were received by the Respondent on behalf of Broxie Harris as the result of these professional efforts.
7. The following is a computation of receipts and disbursements related to the legal services provided in Case No. 71-6413, Ninth Judicial Circuit, Orange County, Florida:

$22,171.58  amount recovered by suit
-10,070.61  amount paid Broxie Harris
__________
$12,100.97
- 8,868.63  40% contingency attorney fee
__________
$ 3,232.34
- 596.07  costs ($896.07 less $300.00 paid by Broxie Harris)
__________
$ 2,636.27  amount withheld from Broxie Harris by Respondent.

Therefore, the Respondent had failed and refused to account for and deliver on demand approximately $2,636.27 to his client, Broxie Harris.
8. The Respondent has refused to promptly pay or deliver to Broxie Harris as requested by her the funds in his possession which she is entitled to receive and has therefore violated Rule 11.12(4) of the Integration Rule of The Florida Bar and Disciplinary Rule 9-102(b)(4) of the Code of Professional Responsibility.
9. The Respondent has received money on behalf of Broxie Harris that is not subject to a counter-claim or set off for attorney's fees, has refused to account or deliver over such money upon the demand properly made by Broxie Harris thereby wrongfully converting such money to his use and has thus violated Rules 11.02(3)(a) and 11.02(4) of the Integration Rule of The Florida Bar and Disciplinary Rule 1-102(A)(4) of the Code of Professional Responsibility.
10. The aforementioned acts as described in paragraphs 2 through 9 above constitute a violation of Florida Statutes § 811.021(1)(b) (1971) being the commission of the crime of grand larceny.
*403 11. The actions of the Respondent constitute a felony of the third degree under the laws of Florida and the Respondent has thereby violated Rule 11.02(3)(b) of the Integration Rule of The Florida Bar and DR 1-102(A)(3) and (4) of the Code of Professional Responsibility. However, I further specifically find that the record does not establish that Respondent has been convicted of a felony since Bar Exhibits L and M clearly establish that the adjudication of guilt has been withheld upon his plea of nolo contendere to the charge of grand larceny.
In reaching the above findings I have considered all the sworn testimony, all the exhibits placed in evidence by both parties, and am satisfied that the findings made are supported by a clear and convincing preponderance of evidence in the record... .
I recommend that the Respondent be found guilty as of violations of his oath as an attorney, of Rules 11.02(3)(a), 11.02(3)(b), and 11.02(4) of the Integration Rules of The Florida Bar and Disciplinary Rules DR 1-102(A)(3), DR 1-102(A)(4), and 9-102(B)(4) of the Code of Professional Responsibility... .
I recommend that the Respondent be suspended from the practice of law in Florida until such time as he has clearly demonstrated that he has his disease of alcoholism under total control. I further recommend that as conditions to his reinstatement to the practice of law in Florida that he be required to do the following:
1. Actively participate in a continuing personal program controlling his disease of alcoholism, including the total abstinence from all forms of alcohol.
2. That he pay the costs of this proceeding.
3. That subsequent to his reinstatement, he make regular periodic money payments to Broxie Harris in the appropriate amount in restitution of his misappropriation of her funds...
Before recommending the disciplinary measures to be applied I considered the following personal history pertaining to the Respondent as reflected in the Florida Bar Journal (September 1974) and Martindale-Hubbell Law Directory, Volume II (1975). He is 44 or 45 years old, a graduate of Duke University, Durham, North Carolina, and the University of Florida Law School, Gainesville, Florida. He was admitted to practice to the Bar of Florida in 1957 and has practiced in Orlando, Florida since that time.
After finding the accused guilty I then considered the prior disciplinary and criminal history of the Respondent, specifically The Florida Bar v. Blalock, 302 So.2d 758 (Fla. 1974) and the parallel criminal prosecution styled State v. Blalock, Case No. CR 74-1876, Orange County, Florida Circuit Court (Bar Exhibits L and M). No other disciplinary or criminal history has been made known to the referee.
The record clearly demonstrates that the Respondent's professional misconduct is directly connected with his disease of alcoholism which in turn has led to financial, marital, and professional problems. Prior to the development of his dependency upon alcohol, Respondent's personal and professional conduct were ethical, competent, and responsible. If and when the Respondent brings his dependency upon alcohol under his complete control, he should be seriously considered for reinstatement to the practice of law in Florida... .
I find the following costs were reasonably incurred by The Florida Bar:

Administrative cost at referee level under
Integration Rule 11.06(9)(a) ................... $ 50.00
Cout [sic] reporter costs ...................... 141.00
 ______
 TOTAL COSTS ................. $191.00

It is apparent to me that other costs may have been incurred. It is recommended *404 that all such costs and expenses, together with the foregoing itemized amounts should be charged against the Respondent."
The Bar acknowledges that Blalock's problems stem entirely from the disease of alcoholism. Its recommendation for a discipline more severe than that recommended by the referee is based in part on the view that a definite (as opposed to an indefinite) suspension will eliminate the pressures which led Blalock to alcoholism and the other Code violations under consideration. The Bar also points out that the conversion of a client's funds has been viewed as one of the least excusable acts of misconduct for which a lawyer can be disciplined.[2] The Bar particularly objects to reinstatement before full restitution to Blalock's client, relying on prior decisions of this Court in like situations.[3]
Blalock's appeal for mitigation of discipline is based on his demonstrated effort to control alcoholism, and on his attempted rehabilitation through supervised employment in a law office under the procedures this Court approved in The Florida Bar v. Thomson, 310 So.2d 300 (Fla. 1975).[4]
We agree with the Bar as to the severity of Blalock's particular misconduct, stealing a client's funds. We also appreciate Blalock's effort to control the root cause of his problems. Our duty is to weigh these personal factors as they affect Blalock, and in so doing also discharge our impersonal responsibilities to protect the public and to generate confidence in the integrity of the legal profession.[5]
We approve the referee's findings of fact and his determination of guilt. Taking all factors into account in prescribing his discipline, we direct that Blalock be indefinitely suspended from the practice of law and shall be eligible for reinstatement only after (1) he has made full restitution of clients' funds, (2) he has paid all costs of this proceeding, and (3) he has demonstrated to the satisfaction of this Court that he has been rehabilitated both as to his alcoholism and as to his appreciation and understanding of the Code of Professional Responsibility.
It is so ordered.
ROBERTS, BOYD, OVERTON, ENGLAND and HATCHETT, JJ., concur.
ADKINS, C.J., concurs in the finding of guilt, but would follow the referee's recommendation for disciplinary punishment.
NOTES
[1] The Referee has recommended an indefinite suspension from the practice of law, restitution of client's funds following reinstatement, payment of all costs of the proceeding, and active participation in an alcoholic disease control program. The Bar urges a maximum three-year term of suspension, coupled with restitution and proof of rehabilitation before reinstatement to the Bar.
[2] The Florida Bar v. Welch, 309 So.2d 537 (1975); The Florida Bar v. Goldhaber, 257 So.2d 13 (Fla. 1971); The Florida Bar v. Scott, 227 So.2d 195 (Fla. 1969); State ex rel. The Florida Bar v. Ruskin, 126 So.2d 142, 143 (Fla. 1961).
[3] The Florida Bar v. Pahules, 233 So.2d 130, (Fla. 1970); The Florida Bar v. Hudson, 199 So.2d 474 (Fla. 1967); In re Dawson, 131 So.2d 472 (Fla. 1961).
[4] Blalock is presently under an indefinite suspension from the Bar for other misconduct during the time period here involved. The Florida Bar v. Blalock, 302 So.2d 758 (Fla. 1974).
[5] The Florida Bar v. Riccardi, 264 So.2d 5, 6 (Fla. 1972); The Florida Bar v. Beaver, 259 So.2d 143, 144 (Fla. 1972).