In the Matter of the Application for Disciplinary Action against Ray H. WALTON, a Member of the Bar of the State of North Dakota.

GRIEVANCE COMMISSION, Petitioner,

v.

Ray H. WALTON, Respondent.

Civ. No. 9216.

Supreme Court of North Dakota.

March 11, 1977.

As Modified May 3, 1977.

Gregory D. Morris and Frederick E. Saefke, Bismarck, for petitioner.

Frank J. Magill, Fargo, and William C. Kelsch, Mandan, for respondent.

VOGEL, Justice.

This is a disciplinary proceeding against an attorney.

Respondent was admitted to practice in this State in 1954, and practiced in Williston as an individual practitioner or in a partnership or as State's Attorney of Williams County until his appointment as Commerce Counsel of the North Dakota Public Service Commission on June 1, 1972. He has been a competent attorney and had a good record until he defalcated money from the estate of Birger Krogen.

While acting as both executor and attorney (a dual capacity fraught with temptation), he took from estate funds in separate bank accounts in the name of the estate approximately $8,300 in excess of the fees subsequently allowed to him by the probate court. After a delay of several years in the closing of the probate, the beneficiaries of the will filed a complaint with the Grievance Commission of the Supreme Court asserting delay in closing the estate. Upon investigation by a grievance committee of the State Bar Association, it was discovered that a defalcation had taken place. Upon being confronted with the finding, the respondent readily admitted the defalcation and refunded all of the money but $2,100. The referee found that the $2,100 shortage was due to the fact that, because of an accounting error, the respondent thought he had made restitution in full. Once the amount of the shortage was established, he refunded the balance of $2,100 also, with interest.

Since the facts are substantially undisputed, and the misconduct is admitted, the dispute between the parties relates to the disposition to be made of the case and as to matters in mitigation.

As mitigation, respondent points to his prompt restitution, his previous good record, his present employment by a public agency and not involving clients' funds, his admission of culpability, and his family situation. He also stated that he was under extreme pressures at the time the defalcation occurred, arising from a severe, almost disabling, and very painful chronic back problem, the difficulty in closing his office and arranging for transfer of his many files to other lawyers to be handled by them, his lack of a secretary at the time, and other personal problems.

The grievance committee investigated the matter and recommended disciplinary proceedings. The Grievance Commission of the Supreme Court recommended disbarment or suspension. We referred the matter to the Honorable Larry Hatch, as referee, and he held a full hearing. He had the benefit of observing the witnesses and their demeanor. As we observed in *Grievance Commission v. Pohlman*, 248 N.W.2d 833 (N.D.1977), the referee is in a better position to weigh the testimony of the witnesses and to determine in general the mitigating circumstances. The referee in this case first recommended that we administer a "private suspension," which we may or may not have the authority to impose, but have never imposed in the past. He later amended his report so as to recommend a "private reprimand." At the hearing before this court, the Grievance Commission recommended a suspension of unspecified duration.

We have stated many times the considerations which concern us in disciplinary proceedings against lawyers. They include the protection of the public from those who have less than minimum competence [see *Matter of Christianson*, 253 N.W.2d 410 (N.D.1977), and *In re Peterson*, 178 N.W.2d 738 (N.D.1970)], and whether a lawyer has committed acts which tend to bring reproach upon the legal profession or are contrary to accepted standards of honesty, justice, or morality [*In re Bosch*, 175 N.W.2d 11 (N.D.1970)].

■ On the one hand, it is impossible to condone the conversion of a client's funds, ". . . one of the least excusable acts of misconduct for which a lawyer can be disciplined." *The Florida Bar v. Blalock*, 325 So.2d 401, 404 (Fla.1976).

Furthermore, lawyers are held to a higher standard than laymen.

"No member of the community is charged with the exercise of a higher degree of good faith, fairness, and honesty in his dealings with others, and in his treatment of clients, than an attorney at law. He is an officer of the court, and should be possessed of a high appreciation of ethical and moral duties." *In re Christianson,* 175 N.W.2d 8, 11 (N.D.1970).

On the other hand, we are impressed with the respondent's otherwise-unblemished record, and particularly with the support he has been given by his present employers, the three elected Public Service Commissioners of the State of North Dakota. All three of them indicated their support of him before the referee, by testimony or affidavit, and all three of them indicated their support of him at the hearing before our court, two of them being personally present at the hearing.

We are satisfied that respondent's conversion of the funds of his client, while inexcusable and only partly mitigated, will not be repeated. We therefore conclude that there is little, if any, danger to the public from any possible repetition of his actions.

██ However, since the public image of the Bar has suffered from his misconduct and his acts were detrimental to the public and to the Bar, we conclude that neither censure nor a shorter suspension would be appropriate, and conclude that his certificate of admission to practice law must be suspended for a period of six months, with the privilege of receiving a restricted certificate to practice at the end of two months, limiting his practice during the remaining four months to a practice not involving the handling of the funds of others. We further conclude that he must pay the costs of the formal proceedings, including legal fees and expenses and costs of any transcripts, to the clerk of the Supreme Court. The amount of costs and expenses shall be determined by the chairman of the Grievance Commission. The chairman of the Grievance Commission may authorize the payment of costs and expenses in equal installments extending over a period of one year. If payments are not made pursuant to the arrangement specified by the chairman of the Grievance Commission, the respondent's certificate of admission shall be suspended automatically, which suspension shall continue until the default in the payments is corrected.

It is so ordered.

ERICKSTAD, C. J., and SAND, PAULSON and PEDERSON, JJ., concur.