**In the Matter of the Application for Disciplinary Action against Jerome L. JAYNES, A Member of the Bar of the State of North Dakota.**

**DISCIPLINARY BOARD OF the SUPREME COURT, Complainant,**

v.

**Jerome L. JAYNES, Respondent.***

**Civ. No. 9582.**

Supreme Court of North Dakota.

May 22, 1979.

---

* *Editor's Note:* The opinion of the Supreme Court of North Dakota in *Hoge v. Hoge,* published in the advance sheets at this citation (278 N.W.2d 429), was withdrawn from this volume and will be republished.

Gregory D. Morris, Bismarck, for the Disciplinary Board.

Jerome L. Jaynes, pro se.

PAULSON, Justice.

On December 9, 1977, an informal complaint[1] was filed with the Disciplinary Board of the North Dakota Supreme Court against Jerome L. Jaynes ["Jaynes"], a licensed North Dakota attorney, alleging that he had neglected to complete heirship proceedings in the estates of Justine Weikum, Ida Weikum Noyes, and Christine Clendenen, for more than four years after he had accepted a $900 retainer fee. It was further alleged that he had accepted a $3600 rental payment on behalf of his clients, but had used the funds for his personal use rather than transferring the money to his clients.[2]

On May 11, 1978, the Inquiry Committee West of the State Bar Association of North Dakota requested that Jaynes provide it with bank records and additional information regarding the $3600 rental payment. Jaynes failed to provide the requested information in the time allowed.

On May 24, 1978, another informal complaint against Jaynes was filed with the Disciplinary Board.[3] The complaint alleged that Jaynes, after agreeing to assist William A. Shepherd, a Wisconsin attorney, with an ancillary probate proceeding on behalf of Albertine G. Coleman, failed to act expeditiously in handling the proceeding.

The Inquiry Committee West considered the informal complaints on July 21, 1978, based upon information obtained through an investigation conducted pursuant to Rule 8 of the North Dakota Rules of Disciplinary Procedure. The Committee forwarded a recommendation to the Disciplinary Board of the Supreme Court that Jaynes's license to practice law be revoked; that he be required to pay the expenses of the disciplinary proceedings against him; and that he be required to repay certain moneys to the

complainants. Jaynes declined to appear before the Committee on July 21, 1978, to explain the disposition of the rental moneys or his failure to cooperate with the Committee.

The Disciplinary Board considered the recommendations of the Inquiry Committee West on August 4, 1978, and directed the counsel for the Disciplinary Board to commence formal disciplinary proceedings by issuing a summons and complaint. Jaynes failed to answer the complaint within one month and was notified of his default by the clerk of the Supreme Court.

When the Disciplinary Board's hearing panel met on November 30, 1978, Jaynes appeared before the panel; admitted the allegations of the complaint; and offered evidence in mitigation of his actions. The mitigating circumstances claimed by Jaynes regarding the first cause of action were that the heirship proceedings were extremely complicated because many parties were involved, several parties had died, and one party was under a guardianship. Jaynes also testified that he had used part of the $3600 rental payment for his own mortgage payments to prevent a foreclosure on his house. The mitigating circumstances claimed by Jaynes regarding the second cause of action were that William A. Shepherd, the Wisconsin attorney, had caused the delay in the proceedings by failing to provide Jaynes with the necessary federal and Wisconsin estate tax returns.

On December 20, 1978, the hearing panel issued findings conclusions, and recommendations to the Supreme Court for disciplinary action against Jaynes. Jaynes and the Disciplinary Board's attorney entered into a stipulation to accept the findings and recommendations of the hearing panel. They also agreed to waive the oral arguments and the submission of briefs to the Supreme Court in the matter, subject to the Supreme Court's approval.

Because of the stipulation between the parties, we will accept the findings, conclusions, and recommendations of the hearing panel as correct for our consideration of the matter. *See Matter of Jaynes*, 267 N.W.2d

---

1. The complaint of December 9, 1977, will be referred to as the first cause of action.

2. Jaynes was retained to represent Jack Clendenen, Diane Loveless, and Clarence Noyes in the heirship proceedings. He was retained to collect the rental payments for Jack Clendenen, Diane Loveless, Clarence Noyes, and Daniel Weikum.

3. The complaint of May 24, 1978, will be referred to as the second cause of action.

782, 783 (N.D.1978); and *Matter of Maddock*, 265 N.W.2d 229 (N.D.1977).

The hearing panel's pertinent findings regarding the first cause of action are as follows:

"XIV.

"Beginning in February of 1973, the Respondent was requested to and did represent Jack Clendenen, Diane Loveless, and Clarence Noyes in the annual collection of farmland rentals and property owned by them. Mr. Raymond Rauscher was a tenant from which the rentals were collected and had rented the property for approximately twenty years. Mr. Rauscher was renting the land in 1973, 1974, 1975, 1976, and 1977, the period of time which the Respondent was responsible for payment of property taxes from the amount so collected and during which period of time the Respondent was responsible for transmittal of these funds to the appropriate parties. Rent for 1973, 1974, and 1975 was received by the Respondent and transmitted to the parties. The Respondent received a $3,600 rent check from the tenant, Mr. Raymond Rauscher, dated June 2, 1976, as and for the 1976 rental on the farm property. The Respondent cashed the check depositing $3,500 in his personal checking account, while retaining $100 in cash on June 9, 1976. These funds were used to pay personal debts including mortgage payments to Gate City Savings and Loan. The Respondent received the 1977 payment from Mr. Rauscher by check numbered 407 and dated April 7, 1977, and transmitted those rentals monies to the appropriate parties, along with an accounting, designating such funds as those received for 1976.

"VII.

"The Respondent, on or about February 16, 1973, was retained by Jack Clendenen, Diane Loveless, and Clarence Noyes to represent them in and for the purpose of completing heirship proceedings in the estates of Justine Weikum, Ida Weikum Noyes, and Christine Clendenen. The Respondent received $900 in attorney's fees to complete the heirship proceedings. On April 16, 1973, the Respondent filed petitions to establish the right of heirship to real property, along with notice for hearing and affidavits in each of the proceedings. No further pleadings were filed by the Respondent and no further action was taken to complete the matters. Ronald J. Weikum, a North Dakota attorney, was hired to complete the proceedings on May 4, 1977.

"VIII.

"On May 6, 1977, at the request of Jack Clendenen, Mr. Weikum called the Respondent at the Jaynes law office in Hettinger, North Dakota and informed the Respondent that because he had not completed the estate of Justine Weikum, Christine Clendenen, and Ida Noyes in a period of over four years, that Mr. Clendenen retained him and that Mr. Weikum was now making a demand for the probate files and information that had been provided to the Respondent, and also for the fee of $900 that had been paid to the Respondent in advance of the probates.

"IX.

"On May 17, 1977, after having received no files or repayment from the Respondent, pursuant to the phone demand of May 6, 1977, Mr. Weikum sent a letter to the Respondent requesting the probate files and refund of unused portion of the $900 attorney's fees.

"X.

"On June 14, 1977, after having received no files or repayment from the Respondent, pursuant to Mr. Weikum's prior requests, Mr. Weikum sent a letter to the Respondent again requesting the probate files and refund of attorney's fees and also requested payment by the Respondent of the $3,600 that he had collected as cash rentals on behalf of Jack Clendenen, Diane Loveless, Clarence Noyes, and Daniel Weikum.

"XI.

"On August 11, 1977, Mr. Weikum having received no reply from the Respondent, pursuant to Mr. Weikum's prior requests for said files and refund of attorney's fees, Mr. Weikum called and spoke with the Respondent by telephone and again demanded the probate files and refund of the attorney's fees.

"XII.

"On October 4, 1977, after Mr. Weikum having received no files or funds from the Respondent, pursuant to his demands, he sent a letter to the Respondent making a final demand for the probate files and all funds that he was holding for Jack Clendenen, Diane Loveless, Clarence Noyes, and Daniel Weikum.

"XIII.

"After Mr. Weikum received no probate files from the Respondent for the estates of Justine Weikum, Christine Clendenen, and Ida Noyes, he proceeded with the probate of the estates in November of 1977 and completed the probates in May, 1978.

"XV.

"On July 24, 1978, Mr. Weikum, on behalf of the heirs of Justine Weikum, Christine Clendenen, and Ida Noyes, sent a letter to the Respondent demanding payment of the unearned legal fees that had been paid to the Respondent and also the cash rent that he had received from lessee, Raymond Rauscher, for the year 1976.

"XVI.

"On December 1, 1978, Mr. Weikum, as attorney for the heirs, received a cashier's check number 23380 dated November 28, 1978, from the First Security Bank and Trust of Miles City, Montana, in the amount of $3,600, in which the Respondent was the remitter."

The hearing panel's pertinent findings regarding the second cause of action are as follows:

"XVII.

"On or about May 24, 1978, a letter of informal complaint signed by Albertine G. Coleman was filed with the Disciplinary Board of the Supreme Court. The Respondent was informed of the complaint and an investigation of the informal complaint was conducted pursuant to Rule 8 N.D.R.C.P. An opportunity to appear before the Inquiry Committee West of the State Bar Association was afforded to the Respondent but the Respondent did not avail himself of the op-

portunity to appear nor did he respond in any other fashion.

"XVIII.

"On or about October 11, 1976, the Respondent agreed to assist William A. Shepherd, a Wisconsin attorney, by performing an ancillary probate proceeding in the estate of Jack F. Ohde in Grant County, North Dakota. The estate in North Dakota consisted of certain real estate in Grant County owned by the decedent and Albertine G. Coleman, as tenants in common.

"XIX.

"After the Respondent accepted the matter and entered into the representation, William Shepherd, the Wisconsin attorney, made numerous requests for information on the status of the estate, attempted on numerous occasions to prod the Respondent into acting more expeditiously with regard to the completion of the estate and the sale of the land, which was the total property in the estate. The Respondent filed no pleadings nor completed any tax matters on behalf of the estate. Mr. Shepherd obtained other North Dakota counsel for the purpose of completing the estate."

The hearing panel also made the following general findings:

"XX.

"The Respondent has a history of complaints for neglect and unreasonable delay, which led to a public reprimand by order of the Supreme Court of the State of North Dakota, on June 28, 1978.

"XXI.

"The Respondent admits the allegations of the complaint affirmatively as well as by his failure to respond to the complaint."

From its findings the hearing panel of the Supreme Court's Disciplinary Board drew the following conclusions and made the following recommendations:

"CONCLUSIONS

"Based upon the above-stated findings, the three member hearing panel of the

Disciplinary Board of the Supreme Court concludes that:

1. The matter is properly before this hearing panel jurisdictionally and procedurally.

2. The Respondent failed to respond to the formal complaint and pursuant to Rule [10(e)] N.D.R.D.P., is deemed to have admitted the charges.

3. In view of the default and the admission by the Respondent of the charges before this panel, as well as the facts contained in the affidavits of proof, there is no question but that the allegations in the first cause of action have been proven by clear and convincing evidence.

4. The conduct of the Respondent, in neglecting, delaying and failing to complete the heirship proceedings; in failing to cooperate with the investigation of the complaint by the Inquiry Committee West of the State Bar Association; in defalcating $3,600 and in failing to return the $3,600 upon demand, constitutes violations of Canon 1, DR 1–102(A)(1), (2), (3), (4), (5), and (6); Canon 6, DR 6–101(A)(3); Canon 7, DR 7–101(A)(1), (2), and (3); and Canon 9, DR 9–102(A) and (B)(3) and (4) of the Code of Professional Responsibility as adopted by the State Bar Association of North Dakota and approved by the Supreme Court and violations of N.D.C.C. § 12.1–23–02, N.D.C.C. § 27–13–05, and N.D.C.C. § 27–14–02.1 and .7.

5. The second cause of action has been proven by clear and convincing evidence.

6. The neglect, delay and failure to complete the ancillary probate matter constitutes a violation of Canon 6, DR 6–101(A) and Canon 7, DR 7–101(A)(1) and (2) of the Code of Professional Responsibility as adopted by the State Bar Association of North Dakota and approved by the Supreme Court.

7. The conduct and violations of the provisions of the Code of Professional Responsibility and the North Dakota Century Code are sufficient basis for the suspension of the certificate of admission of the Respondent for a period of one year.

WHEREFORE, it is the recommendation of this three member hearing panel of the Disciplinary Board of the Supreme Court that the certificate of admission of Jerome L. Jaynes, the Respondent in the above-entitled matter, be suspended for a period of one year and that the Respondent be required to pay the costs of the disciplinary proceedings."

In Conclusion 4, the hearing panel determined that Jaynes's failure to complete the heirship proceedings and failure to remit the $3600 rental payment to his clients as alleged in the first cause of action constituted violations of §§ 12.1–23–02;[4] 27–13–05;[5] and 27–14–02(1, 7);[6] of the North

**4.** *12.1–23–02. Theft of property.*—A person is guilty of theft if he:
1. Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof;
2. Knowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat; or
3. Knowingly receives, retains, or disposes of property of another which has been stolen, with intent to deprive the owner thereof.

**5.** *27–13–05. Attorney's refusal to deliver client's money or property.—Penalty.*—An attorney, except as otherwise provided in sections 27–13–06 and 27–13–07, who receives money or property of his client in the course of his professional business and who refuses to pay or deliver the same to the person entitled thereto within a reasonable time after a demand therefor has been made upon him, is guilty of a class A misdemeanor.

**6.** *27–14–02. Causes for suspension or revocation of certificate of admission to bar.*—The certificate of admission to the bar of this state of an attorney and counselor at law may be revoked or suspended by the supreme court if he has:
1. Committed an offense determined by the supreme court to have a direct bearing upon a person's ability to serve the public as an attorney and counselor at law, or the supreme court determines, following conviction of an offense, that the person is not sufficiently rehabilitated under section 12.1–33–02.1:

.    .    .    .    .

7. Committed any other act which tends to bring reproach upon the legal profession. The enumeration of certain grounds for disbarment or suspension of attorneys at law shall not be deemed a limitation upon the general powers of the supreme court to suspend or disbar for professional misconduct.

Dakota Century Code and of Canon 1, DR 1–102(A); [7] Canon 6, DR 6–101(A)(3); [8] Canon 7, DR 7–101(A); [9] and Canon 9, DR 9–102(A), (B)(3), (4); [10] of the Code of Professional Responsibility as adopted by the North Dakota State Bar Association and approved by the Supreme Court. We agree that the conduct alleged in the first cause of action and found to have been committed by Jaynes constitutes a violation of the above-cited sections of the North Dakota Century Code and Disciplinary Rules of the Code of Professional Responsibility.

■ Jaynes not only failed to complete the heirship proceedings within four years after accepting a retainer fee, but he failed to deliver the case files to his clients or their new attorney after several requests had been made. Neglecting a client's case after accepting it is a very serious violation of the Code of Professional Responsibility.

■ Even more serious, however, was Jaynes's failure to remit the $3600 rental payment to his clients after he had received it. State laws and the Disciplinary Rules prohibit an attorney from misappropriating or commingling funds belonging to his clients. Because attorneys are put in a position of trust by their clients, it is essential that an attorney not mishandle the clients' funds as did Jaynes in this case.

■ In Conclusion 6, the hearing panel determined that Jaynes's delay in completing the ancillary probate proceedings, as alleged in the second cause of action, constituted violations of Canon 6, DR 6–101(A); [11] and Canon 7, DR 7–101(A)(1), (2); [12] of the Code of Professional Responsibility. We agree that the conduct alleged in the second cause of action and found to have been committed by Jaynes constitutes a violation of the above-cited Disciplinary Rules of the Code of Professional Responsibility. Jaynes failed to promptly complete his work on the ancillary probate proceedings after undertaking to do so.

We will now determine what action should be taken in response to Jaynes's neglect in not completing work for his clients, and in mishandling their funds. In

7. *DR 1–102 Misconduct.*
   (A) A lawyer shall not:
   (1) Violate a Disciplinary Rule.
   (2) Circumvent a Disciplinary Rule through actions of another.
   (3) Engage in illegal conduct involving moral turpitude.
   (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
   (5) Engage in conduct that is prejudicial to the administration of justice.
   (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

8. *DR 6–101 Failing to Act Competently.*
   (A) A lawyer shall not:
   (1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
   (2) Handle a legal matter without preparation adequate in the circumstances.
   (3) Neglect a legal matter entrusted to him.

9. *DR 7–101 Representing a Client Zealously.*
   (A) A lawyer shall not intentionally:
   (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
   (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.
   (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B).

10. *DR 9–102 Preserving Identity of Funds and Property of a Client.*
    (A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

    .      .      .      .      .

    (B) A lawyer shall:

    .      .      .      .      .

    (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
    (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

11. See Fn. 8.
12. See Fn. 9.

making the decision, we will consider Jaynes's past record with the Disciplinary Board: four informal complaints against Jaynes were dismissed; three informal complaints resulted in private admonishments; and one resulted in a public reprimand. *Jaynes, supra* 267 N.W.2d at 784–785.

In *Matter of Walton*, 251 N.W.2d 762, 763 (N.D.1977), we stated that:

" . . . it is impossible to condone the conversion of a client's funds, ' . . . one of the least excusable acts of misconduct for which a lawyer can be disciplined.' *The Florida Bar v. Blalock*, 325 So.2d 401, 404 (Fla.1976)."

In *Walton*, the respondent's license was suspended for six months, but he was given the privilege of obtaining a restricted certificate to practice law after two months. The leniency in the *Walton* case was due to the respondent's prior unblemished record and to mitigating circumstances. In the case of *In re Lyons*, 193 N.W.2d 462 (N.D. 1971), the respondent's misappropriation and mishandling of funds constituted embezzlement and resulted in his disbarment. *See In re Rude*, 88 S.D. 416, 221 N.W.2d 43 (1974); and *In re Keith*, 68 S.D. 392, 3 N.W.2d 88 (1942), in which attorneys were disbarred for mishandling funds. Most recently, in *In re Jelliff*, 271 N.W.2d 588 (N.D.1978), the respondent's license was suspended for two months because he mishandled funds.

The unreasonable delay in completing the probate of an estate resulted in a public reprimand in *Jaynes, supra*. In *Matter of Garcia*, 243 N.W.2d 383 (N.D.1976), the respondent's neglect in failing to complete work for a client and his failure to keep clients properly informed resulted in a 30-day suspension of his license to practice law.

After carefully considering Jaynes's conduct, the findings and conclusions of the hearing panel, and legal precedent, we conclude, as did the hearing panel, that Jaynes's license to practice law should be suspended for a period of one year. Because Jaynes's conduct disadvantaged his client and was detrimental to the public and to the legal profession, we conclude that any less severe penalty would be inadequate.

We order that Jaynes's license to practice law in North Dakota be suspended for a period of one year, commencing on the date when he is served with a copy of this opinion. We further order that Jaynes pay the expenses of the disciplinary proceedings as may be determined by the Disciplinary Board. Jaynes shall submit proof of payment to the clerk of this court within thirty days of the date of billing, or, in the alternative, within that period of time shall submit proof that satisfactory arrangements for payment have been made with the Disciplinary Board.

It is further ordered that if Jaynes makes application for reinstatement of his license, he must satisfactorily complete an ethics examination administered by the State Bar Board before he may be readmitted to practice. If the application for reinstatement is made after a period of three years, he must satisfactorily complete the usual standard examination prescribed by the State Bar Board for admission to practice in this State before he may be readmitted to practice.

ERICKSTAD, C. J., and PEDERSON, SAND and VANDE WALLE, JJ., concur.