396 So.2d 165 (1981)
THE FLORIDA BAR, Petitioner,
v.
Jackson BRYAN, Respondent.
No. 58422.
Supreme Court of Florida.
March 12, 1981.
*166 David G. McGunegle, Bar Counsel, and Branch Staff Counsel, Orlando, and John A. Boggs, Asst. Staff Counsel, Tallahassee, for complainant.
Jackson Bryan, in pro. per.
PER CURIAM.
The respondent petitions for review of the report of the referee in this disciplinary proceeding brought against him by The Florida Bar. The referee's findings and recommendations are as follows:

II. Findings of Fact as to Each Item of Misconduct of Which Respondent is Charged

Upon consideration of the pleadings and the evidence before me, pertinent portions of which are commented upon below, I find
As To Count I
Respondent was retained to represent Earl Moye, a nonresident, with respect to his interest in the estate of his sister-in-law which was administered in Florida. On January 13, 1978, before receiving any funds in behalf of his client, Respondent advanced himself, from his trust account, $750 in partial payment of his fee. On January 19, 1978, Respondent received from the estate's executrix, for his client a diamond ring appraised at $3,800, a jade brooch, other jewelry and silverware. The following day he received $12,124.96 in cash, deposited it in a trust account and paid himself an additional $750. In early January Respondent wrote an attorney representing Mr. Moye in Michigan that their mutual client's assets from the estate would be forwarded to him shortly. The jewelry and silverware were delivered to Mr. Moye sometime after February 12, 1978, after additional demand upon Respondent. He retained the cash until August 30, 1978  more than three months after the complaint was filed with The Florida Bar and referred to the grievance committee  at which time he forwarded the remainder to his client after having deducted his fee. Stock valued at $6,000 was sent to Mr. Moye by a brokerage firm and never came into Respondent's hands.
Mr. Moye suffered no economic loss because of Respondent's misconduct. It is reasonable to assume however that it inflicted inconvenience and anxiety upon him and undermined his confidence in lawyers and the legal profession in general and in Mr. Bryan in particular.
Respondent testified in substance that he did not consciously intend to misappropriate his client's money or deny him its use, but that there had been a dispute or misunderstanding over the amount of his fee and he delayed remission of the money out of anger and spite and frustration.
As To Count II
A Bar audit of Respondent's two trust accounts revealed a $750 advance to himself in payment of one half of his fee before receipt of any money or other property for the account of Mr. Moye. He paid himself the remainder upon receipt of his client's cash legacy on January 20, 1978. Fourteen days later the amounts on deposit in the trust accounts *167 were insufficient to cover Respondent's liability to Mr. Moye without taking into account any other possible outstanding trust obligations. Similar deficiencies continued in these accounts through parts of March, April and July, 1978. Withdrawals from the trust accounts consistently exceeded deposits. During the audit period Respondent deposited $102,300 in trust and withdrew $133,000. The resulting deficit of $30,700 was eliminated by Respondent not withdrawing earned fees. He commingled personal money with trust funds and paid personal and office expenses from trust accounts.
Respondent kept index cards and clients' ledger cards for his trust accounts but did not periodically reconcile them nor did he reconcile differences between checkbook balances and bank statements.
Upon recommendation of the Bar auditor, Respondent employed a certified public accountant to prepare reliable trust accounting records and co-sign checks drawn upon the trust accounts. However, the accountant withdrew from that employment and the checks are being cosigned by another attorney upon recommendation of the circuit grievance committee.
When paying annual bar dues for fiscal year 1978-1979, Respondent did not sign his annual certificate on the dues statement attesting his familiarity with the rules governing trust accounts and his substantial compliance with their minimum requirements detailed in Fla.Bar Integr. Rule, Article XI, Rule 11.02(4)(c) and further defined by Section 5 of the By-laws under the Integration Rule.
Respondent attributes his problems with the trust accounts to his own carelessness, inattention and lack of skill in the art of bookkeeping and faults himself for entrusting that responsibility to employees equally artless and unskilled. He gives assurance that the accounts are now in compliance with bar standards and that they will remain in that condition.

III. Recommendations as to Whether or not Respondent Should be Found Guilty

As to each count of the Complaint I make the following recommendations as to guilt or innocence.
As To Count I
I recommend that Respondent be found guilty and specifically that he violated Article XI, Disciplinary Rules 11.02(3)(a) and (4) and 9-102(B)(3) and (4), Code of Professional Responsibility in that he:
A) Engaged in conduct involving moral turpitude, dishonesty, fraud, deceit and misrepresentation.
B) Failed to maintain complete records of all funds and other properties of a client coming into his possession and failed to render appropriate accounts to his client regarding them.
C) Failed to pay or deliver, upon demand, to a client as requested by the client funds and other property in his possession which the client was entitled to receive.
D) Commingled personal money with trust funds and drew upon trust accounts for the payment of personal bills and expenses of his law practice.
As To Count II
I recommend that Respondent be found guilty of violating Article XI, Rules 11.02(3)(a) and 4(c) of the Integration Rule and Disciplinary Rules 1-102(A)(4) and 9-102(B)(3) in that he:
A) Failed to maintain complete records of all funds and other properties of a client coming into his possession and failed to render appropriate accounts to his client regarding them.
B) Failed to maintain prescribed minimum trust accounting records and failed to follow minimum trust accounting procedures.
C) Engaged in conduct involving moral turpitude, dishonesty, fraud, deceit and misrepresentation.
D) Failed to pay or deliver, upon demand, to a client funds and other personal *168 property in his possession which the client was entitled to receive.

IV. Recommendations as to Disciplinary Measures to be Applied

I recommend that Respondent be suspended from the practice of law for six months to be readmitted upon proof of rehabilitation and payment of $1,066.95 costs.
Respondent is 56 years old, a graduate of the University of Florida and the Harvard Law School. He was admitted to the Florida Bar in 1951 and has since served as an administrative assistant to a Florida congressman; has occupied positions within the Bar; has no prior disciplinary record; is in poor health, suffering from Parkinson's disease, and has a wife and four children to support.
The Respondent is remorseful, contrite and embarrassed by his conduct. He appeared before the grievance committee, waived his right to defend and to have counsel and answered fully all questions asked of him by the committee and Bar counsel. He fully cooperated with the Bar auditor and made all his records available to him and has voluntarily agreed to a supervisory co-signing program for handling trust funds. He waived his right to a hearing before the referee and his right to counsel and fully answered all questions asked of him and states that he is ready to accept whatever penalty may be ultimately applied.
Respondent has fully confessed the wrongs charged to him pointing out that his misconduct has caused no economic loss to anyone. He suggests that his problems coincided approximately with the discovery that he had Parkinson's disease and with the collapse of a number of investments and resulting threats of foreclosure. He describes himself as having gone "through a sort of temporary insanity period."
The grievance committee's recommendations of a public reprimand followed by a period of probation largely ignores a sizeable body of case law developed by our Supreme Court in a lengthy series of similar cases and is unreasonably lenient. On the other hand, the Bar's recommendation of a two year suspension from the practice of law seems, under a fair evaluation of all relevant facts and circumstances, to be unduly harsh and excessively punitive.[*]
This referee understands and appreciates the seriousness of the misprisions charged to the Respondent and is mindful that such misconduct is fraught with grave consequences not only to the offending lawyer and his client but to the public in general and undermines public confidence in our legal institutions. Mismanagement of a client's funds is second only in gravity to their actual misappropriation.
Respondent's poor health and economic misfortune tend to evoke the natural sympathy common to most of humanity while his breach of ethics tends to engender equally human feelings of anger, resentment and vindictiveness. However, my duty, as I perceive it, demands that such sentiments be cast aside and a decision reached in sound and reasoned judgment free of and unfettered by sympathy, bias, prejudice or other sentiment either for or against the Respondent. The result must be fair to both the public and the Respondent, sufficient to punish a breach of ethics, encourage Respondent's reformation and rehabilitation and severe enough to deter others from like violations.
(Footnote omitted.)
We find the record supports the referee's findings and recommendations. Respondent is therefore suspended from the practice of law for a period of six months commencing with the filing of this opinion and shall not be readmitted until proof of rehabilitation. Costs in the amount of $1,066.95 are hereby assessed against respondent.
It is so ordered.
*169 SUNDBERG, C.J., and BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
NOTES
[*] It appears from copy of letter from Bar counsel directed to the referee attached to respondent's brief that, in fact, the Bar urged a suspension of not more than three months.