426 So.2d 955 (1982)
THE FLORIDA BAR, Complainant,
v.
William E. WHITLOCK, III, Respondent.
No. 60445.
Supreme Court of Florida.
May 27, 1982.
Rehearing Denied March 10, 1983.
John F. Harkness, Jr., Executive Director and Stanley A. Spring, Staff Counsel, Tallahassee, and Michael C. Whittington and John A. Boggs, Bar Counsels, Tampa, of The Florida Bar, for complainant.
Richard T. Earle, Jr. of Earle & Earle, St. Petersburg, for respondent.
PER CURIAM.
We have for review the report and recommendation of the referee in the case of The Florida Bar v. William E. Whitlock, III. Jurisdiction is pursuant to article V, section 15, Florida Constitution.
The report of the referee included the following findings.
As to Count I
1. Respondent, WILLIAM E. WHITLOCK III, is and was at all times hereinafter a member of The Florida Bar, subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.
2. Respondent handled a real estate closing in May 1977, concerning Apt. 214, Lodge 15, at Innisbrook at Tarpon Springs, Florida, wherein the purchaser was Mrs. Patricia L. Finck.
3. Mrs. Finck through her New York attorney, David C. Laub, sent Respondent a check for $2,996.47 on or about May 31, 1977, which check was to cover the club initiation fee for Mrs. Finck's quarterly dues, quarterly maintenance and other items. Respondent was to send Innisbrook $2,787.04.
4. On or about May 31, 1977, Respondent sent a check in the amount of $287.04 to Innisbrook which check was received by Innisbrook and deposited to its account.
5. Innisbrook made numerous contacts with Respondent and his law office employees, including a certified mail letter dated March 1, 1978. Respondent failed to pay Innisbrook the additional $2,500.00 due until April 18, 1978 after intervention by The Florida Bar.
6. Respondent claimed that he had sent a $2,500.00 check to the real estate *956 agent handling the sale of the subject condominium on May 31, 1977, but the real estate agent failed to deliver any such check to Innisbrook and Respondent failed to determine this or take any action to correct the situation until April 18, 1978, after intervention by The Florida Bar.
7. From May 1977 through April 1978, Respondent failed to make any reconciliations of his trust account records which reconciliations would have disclosed the alleged outstanding trust account check in the amount of $2,500.00 payable to Innisbrook, which may have been in the hands of the real estate broker.
As to Count II
8. Because of the irregularities in Respondent's trust account, The Florida Bar engaged James T. Ayers, a Certified Public Accountant, to audit Respondent's trust account. The audit was commenced on July 31, 1978 and disclosed the following irregularities in the trust account:
(a) There had never been any reconciliation of Respondent's trust account records.
(b) As of the date of The Florida Bar audit, said trust account was short approximately $20,000.00.
(c) In July 1978, after Respondent had received notice of The Florida Bar audit, a check for $1,210.00 was written by Respondent's secretary, which was to pay for two months' rent and a late charge on Respondent's personal apartment.
(d) Payroll checks for Respondent's office employees were written on Respondent's trust account in May and June of 1977.
(e) Checks in the amounts of $1,500.00, $5,000.00, and $7,500.00 were drawn on the trust account and transferred to Respondent's general office account or to Respondent personally without a prior determination of whether earned fees justified such transfers. Such checks were drawn against the trust account when Respondent's office or Respondent personally needed money.
(f) Real estate closing statements were subject to Respondent's supervision and, consequently, were prepared incorrectly causing overpayments from the trust account in excess of $7,000.00.
(g) One closing statement was improperly prepared to the extent that a $36,199.78 check was returned for insufficient funds. The check should have been for $19,263.36.
As to Count III
9. The Florida Bar concluded its audit of Respondent's trust and general office accounts on February 15, 1979.
10. The final audit revealed an additional shortage of at least $1,437.92, which may have existed in whole or in part at the time of the first audit.
11. On July 31, 1978, the Respondent had agreed to use a new trust account for all transactions after that date but failed to comply with such promise and had not, in fact, audited checks for a new account by February 15, 1979.
12. Cost deposits were routinely deposited in and commingled with Respondent's general office account along with earned fees and other monies belonging to Respondent.
13. Respondent's records of deposit were inadequate to show the source of such deposits as determined by the audit of February 15, 1979.
14. Overdraft checks were presented for payment 27 times against Respondent's general office account, # 2-431-7, the Clearwater Oaks Bank, from October 1978 through January 1979.
15. On October 26, 1978, less than one week after the account above described was opened, a check for $1,000.00 was presented for payment creating overdraft of $832.15 and Respondent knew or should have known there were insufficient funds on deposit to cover such check.
16. Respondent allowed his non-lawyer employee to manage and control his trust and general accounts without adequate supervision or control by Respondent *957 during the period July 21, 1978 through February 15, 1979.
The referee recommended that respondent be found guilty as to all counts, and that he be disbarred from the practice of law in Florida.
We do not feel that the misconduct in this case, when considered with punishment imposed on other attorneys for similar misconduct, is sufficient to justify disbarment. See, e.g., The Florida Bar v. Bryan, 396 So.2d 165 (Fla. 1981); The Florida Bar v. Allen, 355 So.2d 778 (Fla. 1978); The Florida Bar v. Blalock, 325 So.2d 401 (Fla. 1976); The Florida Bar v. DuBois, 322 So.2d 498 (Fla. 1975); The Florida Bar v. Weaver, 279 So.2d 298 (Fla. 1973); The Florida Bar v. Pahules, 233 So.2d 130 (Fla. 1970).
Furthermore, the record discloses the following facts in mitigation:
1. The $20,000 shortage in Respondent's Trust Account mentioned in paragraph 8(B) of the Referee's report was promptly reimbursed when discovered.
2. The $1,437.92 shortage in Respondent's Trust Account mentioned in paragraph 10 of the Referee's report was promptly reimbursed.
3. The Respondent's misconduct caused no economic loss to anyone other than Respondent.
4. Respondent cooperated fully with The Florida Bar in its investigation and audit of his accounts and made all of his books and records available.
We find that in this case a three-year suspension with proper proof of rehabilitation is the proper penalty. Accordingly, William E. Whitlock, III, is hereby suspended from the practice of law for three years and may then be readmitted only upon proper proof of his rehabilitation. The suspension shall be effective June 28, 1982, thereby giving respondent time to close out his practice and take the necessary steps to protect his clients, and it is ordered that respondent shall not accept any new business. Costs in the amount of $2,421.50 plus any other costs that have been incurred with respect to this proceeding are hereby taxed against the respondent.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON and McDONALD, JJ., concur.
ALDERMAN, J., dissents with an opinion.
ALDERMAN, Justice, dissenting.
In my view, disbarment, as recommended by the referee, is the appropriate discipline for Whitlock's misconduct.
Whitlock violated Florida Bar Code of Professional Responsibility, Disciplinary Rule 6-101(A)(3) by grossly neglecting the handling of a real estate closing and neglecting the proper handling of his trust account and making unauthorized withdrawals therefrom. He violated Florida Bar Integration Rule, article XI, Rule 11.02(4) and Florida Bar Code of Professional Responsibility, Disciplinary Rule 9-102(A) by mishandling trust funds entrusted to him and not following procedures provided by Rule 11.02(4). He violated Florida Bar Integration Rule By-laws, article XI, section 5(b), (c), (d) by failing to make reconciliations of his trust account and completely failing to follow the basic requirements of trust account procedures and by commingling his trust funds with his general operating office funds. He violated Florida Bar Code of Professional Responsibility, Disciplinary Rule 9-102(B)(3) by failing to maintain proper trust account records, by drawing against such trust account without proper explanation, and by not rendering appropriate accounts to his clients, particularly insofar as concerned several real estate closings. He violated Florida Bar Code of Professional Responsibility, Disciplinary Rule 1-102(A)(6) when he mishandled his trust account to such an extent that it adversely reflected on his fitness to practice law. He violated Florida Bar Code of Professional Responsibility, Disciplinary Rules 1-102(A)(2) and 3-104(C) by permitting his secretary to manage and control his trust fund.
Penalties imposed against attorneys who violate the Code of Professional Responsibility should correspond to the seriousness of their offenses and should be severe enough to deter others who might be *958 tempted to engage in similar violations. In assessing the penalty for the misuse of clients' funds, in The Florida Bar v. Breed, 378 So.2d 783, 785 (Fla. 1979), we said:
However, we agree with the referee that misuse of clients' funds is one of the most serious offenses a lawyer can commit... . We give notice, however, to the legal profession of this state that henceforth we will not be reluctant to disbar an attorney for this type of offense even though no client is injured.
Applying these standards, I find that in the present case Whitlock should be disbarred.