In the Matter of the Application for DIS-
CIPLINARY ACTION AGAINST Shel-
ley LASHKOWITZ, a Member of the
Bar of the State of North Dakota.

DISCIPLINARY BOARD OF the SU-
PREME COURT OF the STATE OF
NORTH DAKOTA, Petitioner,

v.

Shelley LASHKOWITZ, Respondent.

Civ. Nos. 920376, 920377.

Supreme Court of North Dakota.

June 16, 1993.

Vivian E. Berg (argued), Bismarck, for
petitioner.

Vogel, Brantner, Kelly, Knutson, Weir &
Bye, Ltd., Fargo, and Stefanson, Landberg
& Plambeck, Moorhead, for respondent; ar-
gued by John D. Kelly and Randolph E.
Stefanson.

PER CURIAM.

This is a disciplinary proceeding against
Shelley Lashkowitz, a former attorney in
Fargo. Lashkowitz was admitted to the
practice of law in the State of North Dako-
ta in 1957, and was a member of the bar
until 1987. He moved to Denver, Colorado,
in 1988, and has not sought relicensure in
this or any other state since 1989. Lash-
kowitz maintains that he does not intend to
resume the practice of law at any time.

The subject matter of this proceeding
originated from an arrangement between
Lashkowitz and Middleton & Anderson
(Middleton), a law firm from Georgia. The
arrangement provided that Lashkowitz
would serve as local counsel for Middleton
in asbestos cases initiated in North Dakota.
Middleton represented plaintiffs claiming
injury resulting from exposure to asbestos
products. Supposedly, Middleton had es-
tablished similar relationships with other
attorneys in numerous states. There is
conflicting evidence in the record as to the
extent of Lashkowitz's involvement with
the cases, and also as to the amount he was
to receive for his services. One thing is
certain, the amount of asbestos cases in-
creased dramatically after the arrangement
was reached, and the workload for both
Lashkowitz and Middleton became very
substantial.

As local counsel, Lashkowitz would fre-
quently negotiate settlements with defen-
dants in the asbestos cases, and once a
settlement was reached, the defendants
would often send Lashkowitz the settle-
ment proceeds for proper distribution.
There is a great deal of dispute in the
record concerning the extent and duration
of Lashkowitz's authority to handle settle-
ments and the resulting proceeds, but the
record is clear that he had access to pro-
ceeds from settlements on many occasions.

These proceedings arose upon the com-
plaint of Middleton. Middleton asserts that
Lashkowitz did not forward the adequate
amount of funds to Middleton under their
fee-sharing agreement when he distributed
proceeds from various settlements. Fol-
lowing further investigation by the Hear-
ing Body of the North Dakota Disciplinary
Board it was discovered that Lashkowitz
had been mishandling clients' funds by con-

verting or "borrowing" the funds for his own use. He would personally use funds from one settlement, and when the next settlement arrived he would funnel those funds to the previous clients. It was similar to a kiting operation with checks.[1] All of the clients were eventually paid, and no clients are yet awaiting payment; however, Lashkowitz concedes that he improperly managed his clients' money, and that he converted and borrowed clients' funds for his own use. The issue of money owed to Middleton was much more complex. The record is full of factual disputes including the fee-sharing arrangement between Lashkowitz and Middleton, the amount of work Lashkowitz performed on the asbestos cases, and the extent of Lashkowitz's authority to settle cases and handle settlement funds.

The case proceeded through the disciplinary process, eventually resulting in recommendations from the Disciplinary Board. The Board recommended that: (1) Lashkowitz be disbarred; (2) Lashkowitz pay restitution in the amount of $20,265 to Middleton as a condition of reinstatement; (3) Lashkowitz pay costs and attorney's fees in the amount of $5,438.55. These are the recommendations from which Lashkowitz appeals. We agree with the first and third recommendations, but not with the second.

■ Before we reach the merits of the recommendations, we find it necessary to address a motion brought by disciplinary counsel at oral argument before this Court. Subsequent to the filing of this appeal, we received several letters of character reference in support of Lashkowitz from other members of the bar, former employees, and local politicians. Counsel for the Disciplinary Board moved that such letters be stricken from the record because they were improper *ex parte* communications with this Court, and they were not part of the record below. We agree. *See In re Disciplinary Proceedings against Eisenberg*, 117 Wis.2d 332, 344 N.W.2d 169, 172 (1984) (it is improper to consider letters of character reference for the attorney, sent to the judicial body at the attorney's request by attorneys and others who did not testify at the disciplinary hearing, and whose statements as to attorney's character were not made under oath). Thus, the letters received by this Court in support of Lashkowitz will not be considered.

■ As to the recommendations, we agree with the Disciplinary Board that Lashkowitz must be disbarred. He violated some of the most important rules of professional conduct by converting his clients' money for his personal benefit.[2]

1.  Kiting is defined as the "wrongful practice of taking advantage of the float, the time that elapses between the deposit of a check in one bank and its collection at another." Black's Law Dictionary 871 (6th ed. 1990).

2.  Lashkowitz's misconduct occurred between 1981 and 1986. During that period, the conduct of an attorney was governed by the Code of Professional Responsibility, enacted in 1977, and effective until 1987. The Code was replaced, in 1988, by the current Rules of Professional Conduct. Under the Code, the Disciplinary Board found that Lashkowitz had violated Canon 1, regarding the integrity and competence of the legal profession, and Canon 9, concerning the preservation of the identity of funds and property of a client. More specifically, the Board found a violation of these Disciplinary Rules under each of the above Canons.
    "*DR 1–102 Misconduct.*
    (A) A lawyer shall not:
    \*  \*  \*  \*  \*  \*
    (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

    (5) Engage in conduct that is prejudicial to the administration of justice.
    (6) Engage in any other conduct that adversely reflects on his fitness to practice law."
    "*DR 9–102 Preserving Identity of Funds and Property of a Client.*
    (A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
    (1) Funds reasonably sufficient to pay bank charges may be deposited therein.
    (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the

As we have noted before, "it is impossible to condone the conversion of a client's funds." *In re Disciplinary Action against Walton*, 251 N.W.2d 762, 763 (N.D. 1977). In fact, we have labeled such behavior "one of the least excusable acts of misconduct for which a lawyer can be disciplined." *Id.* [quoting *The Florida Bar v. Blalock*, 325 So.2d 401, 404 (Fla.1976)].

Even though the attorney in *Walton* was suspended and not disbarred, we believe a stricter approach is warranted in Lashkowitz's case because his conduct is more egregious. There is evidence in the record indicating that the conversion of funds occurred more than once, it involved many clients and transactions, and was a patterned activity. Furthermore, we have disbarred attorneys before when we found the conversion of clients' funds coupled with other aggravating factors. *See In re Disciplinary Action against Anderson*, 491 N.W.2d 703 (N.D.1992). Thus, under these facts, we conclude that Lashkowitz's conduct requires disbarment.

We do not, however, agree with the Disciplinary Board's recommendation of restitution, in any amount. After scouring the record, we find that the evidence provided is too uncertain to determine what amount, if any, Lashkowitz owes to Middleton. It is unclear what the fee agreement was between the two parties. There is disagreement regarding the amount of work Lashkowitz did on the asbestos cases. These are issues that should be decided in a contract action below, and not by this Court. Because we are bound by the record before us, and on that record any amount due is too uncertain for us to determine, we decline to order that Lashkowitz pay restitution.

Lastly, we agree with the Disciplinary Board that Lashkowitz must pay costs and attorney's fees in the amount of $5,438.55.

It is so ordered.

VANDE WALLE, C.J., SANDSTROM and MESCHKE, JJ., and ERICKSTAD, Surrogate Judge, concur.

ERICKSTAD, Surrogate Judge, sitting in place of LEVINE, J., disqualified.

disputed portion shall not be withdrawn until the dispute is finally resolved.
  (B) A lawyer shall:

\*   \*   \*   \*   \*   \*

  (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
  (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."